UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ronald J. Vogland,

Plaintiff,

v.

Civil No. 01-509 RHK/JMM
**MEMORANDUM OPINION AND ORDER**

Qwest Corporation, f/k/a
U S West Communications Inc.,

Defendant.

---

Rhett A. McSweeney and Mark C. Hart, McSweeney & Fay, P.L.L.P., Minneapolis, Minnesota, for Plaintiff.

Jeanette M. Bazis, Greene Espel, P.L.L.P, Minneapolis, Minnesota, and Charles D. Henson, Kutak Rock, L.L.P., Denver, Colorado, for Defendant.

---

**Introduction**

Plaintiff Ronald J. Vogland ("Vogland") commenced the instant action alleging that Defendant Qwest Corporation ("Qwest")[1] breached its fiduciary duty owed to Vogland under the Employee Retirement Income Security Act of 1974 ("ERISA"). Currently before the Court is Qwest's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will grant the motion.

[1] In 2000, Qwest and U S West, two large communication service providers, merged and became Qwest Corporation. Although some of the facts relevant to this case occurred prior to the merger, for simplicity, the Court will refer to the Defendant as Qwest.

FILED JUL 18 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. JUL 18 2001
DEPUTY CLERK

## Background[2]

Vogland was employed by AT&T from November 1987 until February 2000, as a customer sales and service representative. (Am. Compl. ¶ 11.) In December 1999, Vogland responded to a job posting on Qwest's internet web site for a network technician position. (Id. at 10-11.) Vogland met with Jeannie Christensen ("Christensen") from Qwest's human resource department to discuss the network technician position. At this meeting, Vogland asked Christensen if the seniority that he had accumulated with AT&T would transfer to Qwest, as he would not be interested in the position if his seniority was not transferrable. (Id. at ¶ 13.) Christensen "guaranteed" Vogland that his seniority would transfer. (Id.) Christensen then conditionally offered Vogland the position provided that he pass a strength and drug test. (Id. at ¶ 12.)

While Vogland was at the drug testing facility, he spoke with Christensen on the telephone and was again assured that his seniority would transfer to Qwest. After successfully completing the strength and drug tests, Vogland was officially offered the position by Theresa Winger ("Winger"), another Qwest human resource employee. Winger also "guaranteed" Vogland that his seniority would transfer from AT&T. (Id. at ¶ 15.) Vogland accepted the position and began working at Qwest on February 11, 2000. (Id. at ¶ 18.) On February 16, 2000, Vogland filed a form with Qwest requesting that his seniority at A T & T be transferred. (Id. at ¶ 20.) On May 10, 2000, Vogland

---

[2] The following facts are taken from Vogland's Amended Complaint.

was informed by Qwest that it would not recognize Vogland's seniority from AT&T. (Id. at ¶ 21.) This suit followed.

## Analysis

### I. Standard of Decision

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. See Cooper v. Pate, 378 U.S. 546 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II. Merits

Vogland asserts one claim of breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3), and seeks the following relief: (1) an order requiring Qwest to cease making oral representations to prospective employees regarding the transfer of seniority, (2) an order requiring Qwest to credit Vogland for the twelve years he worked at A T & T, (3) restitution in the amount that Qwest was unjustly enriched by obtaining Vogland's skills at below market value, and (4) attorney's fees. Qwest argues that Vogland is not entitled to any relief because no plan fiduciary was involved in the representations concerning seniority, and, even if a plan fiduciary was involved, Vogland's claim is actually a claim for benefits which must be brought pursuant to 29 U.S.C. § 1132(a)(1)(B). Qwest also argues that Vogland's claim for restitution is a poorly veiled claim for damages, which are not permitted under ERISA. Because the Court finds that the representations to Vogland did not involve a plan fiduciary, it will not address Qwest alternative arguments.

Vogland contends that because Qwest had discretionary authority and control over the interpretation of the Plan and the disposition of the Plan assets, it was a plan fiduciary. Vogland further contends that Qwest, through its employees Christensen and Winger, breached its fiduciary duty by not accurately representing the material facts concerning the Plan. A plan fiduciary is defined in ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

> disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[3]

29 U.S.C. § 1002(21)(A).

Qwest's Pension Plan provides that the Employee Benefits Committee ("Committee") is the fiduciary of the Plan, and "[t]he Committee shall have the discretion and authority to determine conclusively for all parties all questions arising in the administration of the Plan . . . ." (Bazis Aff. Ex. C at 115-16 (US West Pension Plan).) The Plan also permits the Committee to delegate its responsibility to employees of the Company; however, there is no allegation in the Amended Complaint, nor does Vogland argue, that the Committee delegated this responsibility to Christensen, Winger, or any employee of Qwest.

Plaintiff argues that Qwest had discretionary control over the management and administration of the Plan because, pursuant to the Plan's terms, Qwest could amend or terminate the Plan, appoint third-party vendors to the Plan, appoint and remove members of the committee, and, in the absence of the Committee, would be responsible for the exercise of the Plan administrator's duties. (Id. at 115.) The Plan specifically provides, however, that these duties are carried out in Qwest's capacity as "Plan Sponsor and not as a fiduciary . . . ." (Id.) Moreover, Qwest's discretion to administer these duties are

---

[3] ERISA also allows for the specific naming of fiduciaries in a plan. 29 U.S.C. § 1102(a) (1998). There is no allegation in the instant case that the Plan at issue named either Christensen or Winger as fiduciaries.

limited by other sections of the Plan, and do not allow for unfettered discretion by Qwest, and it is the existence of an unfettered discretion that is the "benchmark for fiduciary status under ERISA, 29 U.S.C. § 1002(21)." Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 632 (8th Cir. 2001) (quoting Maniace v. Commerce Bank of Kansas City, 40 F.3d 264, 267 (8th Cir.1994)). Accordingly, because Qwest is neither a plan fiduciary nor does Qwest exercise discretion under the Plan, Qwest cannot liable for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3).

Even if the Court were persuaded that Qwest exercised sufficient discretion over the administration of the Plan, there is nothing in the Amended Complaint that suggests that Christensen and Winger were acting as plan fiduciaries themselves, or were acting on behalf of Qwest in its role as plan fiduciary. In 29 C.F.R. § 2509.75-8, the Department of Labor stated that "a person who performs purely ministerial functions such as the types described above[4] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control [with respect to] the plan . . . ."

---

[4] The Department determined that purely ministerial functions consisted of functions such as calculating services and compensation credits for benefits, calculating benefits, or orienting new participants and advising participants of their rights and options under the plan. 29 C.F.R. § 2509.75-8. Christensen and Winger's representations to Vogland involved the ministerial function of advising a participant, or in this case, a future participant of his rights under the Plan.

Consequently, the fact that Christensen and Winger gave Vogland information regarding his benefits did not convert them to plan fiduciaries; they were performing minor ministerial functions for the Plan. Further, the fact that they were, arguably, employees of the plan fiduciary does not alter this finding. The Department of labor has also stated that, in the case of a plan that is administered by an employer, the employee is not a fiduciary of the employer sponsored plan simply by virtue of his employment. Id. The employee is a fiduciary only to the extent they have responsibility for performing one of the functions in 29 U.S.C. § 1000(21)(A), i.e., management or administration of the Plan or disposition of the Plan assets. Because neither of these functions was invoked when Christensen and Winger gave erroneous information to Vogland regarding his transfer of seniority, the two employees cannot be considered plan fiduciaries.

**Conclusion**

Accordingly, for the foregoing reasons, and based upon all of the files, records and proceeding herein, **IT IS ORDERED** that Qwest's Motion to Dismiss (Doc. No. 9) is **GRANTED**. Vogland's Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

July 18, 2001

RICHARD H. KYLE
United States District Judge

JUL 18 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500